UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTY SIMS,

       Plaintiff,                  CIVIL ACTION NO. 07-12646

     v.                             DISTRICT JUDGE AVERN COHN

RANDY REWERTS, JOSEPH       MAGISTRATE JUDGE VIRGINIA M. MORGAN
BARRETT, and DAVID BARLOW,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants retaliated against him for exercising his rights under the United States Constitution. The matter comes before the court on Defendants' Motion for Summary Judgment (D/E # 15). Plaintiff filed a response to defendants' motion (D/E #24). For the reasons discussed below, this Court recommends that defendants' motion be **DENIED.**

### II. Background

While incarcerated at the G. Robert Cotton Correctional Facility, plaintiff became enrolled in Assaultive Offender Therapy ("AOP") on November 1, 2006. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 2) According to plaintiff, he had

-1-

previously been denied parole because he had not completed the therapy.  Plaintiff also declares that a medical hold was placed in his file preventing a transfer while plaintiff was in the program.  (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 2)

According to plaintiff, he filed a grievance on March 3, 2007, regarding persistent problems with receipt of his mail.  (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 3)  According to MDOC documents, plaintiff's grievance was received on March 9, 2007.  (Receipt for Step I Grievance, attached as Exhibit A to Defendants' Motion for Summary Judgment; Step I Grievance Response, attached as Exhibit A to Plaintiff's Complaint)

It is undisputed that, on March 9, 2007, defendant Rewerts came to plaintiff's cellblock to interview prisoners about their grievances.  (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 4; Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 4)  According to plaintiff, he was one of the prisoners interviewed.  (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 4)  Plaintiff also declares that he and Rewerts argued about the grievance, and plaintiff informed Rewerts that plaintiff would seek further review of the grievance.  (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶¶ 4-5)  David Inman, another inmate at the G. Robert Cotton Correctional Facility, heard plaintiff and Rewerts arguing, as well as plaintiff stating he would seek further review of the grievance.  (Declaration of David Inman, attached as Exhibit B to Plaintiff's Response, ¶ 2)  According to Rewerts, he was unaware on March 9 that plaintiff had filed a grievance and plaintiff was not one of the prisoners he interviewed on that day.  (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary

Judgment, ¶ 4) Rewerts also denies speaking to or engaging in an argument with plaintiff on that day. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 5)

Plaintiff further declares that Unit Officer Mark Cross told plaintiff that Rewerts had called Cross on March 9, 2007, to say that Rewerts hoped plaintiff had thermal underwear. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 6) James Bellville, another inmate at the G. Robert Cotton Correctional Facility, heard Cross' statement to plaintiff about Rewert's comment regarding thermal underwear. (Affidavit of James Bellville, attached as Exhibit C to Plaintiff's Response, ¶ 4) Rewerts denies making any such comment to Cross. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 7)

Also on March 9, 2007, defendant Barlow screened plaintiff for plaintiff's Security Classification. The reason for the screen was plaintiff's future transfer. The screen was approved by defendant Barrett. (Security Classification Screen - Review, attached as Exhibit B to Plaintiff's Complaint) According to Barlow, the Transfer Coordinator, Patricia Vining, contacted him and requested that he complete the Security Classification Screen. (Affidavit of David Barlow, ¶¶ 3, 4, attached as Exhibit D to Defendants' Motion for Summary Judgment)

On March 12, 2007, plaintiff was transferred to the Chippewa Correctional Facility, a Level III prison in Kinross, Michigan. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 8) According to plaintiff, plaintiff's unit advisor at the Chippewa Correctional Facility told plaintiff that plaintiff should not be at a Level III prison because of

plaintiff's security level and that plaintiff must have "pissed someone off." (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 9) As a result of his transfer, plaintiff lost his prison job and his therapy program was interrupted. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 12) Rewerts states that he did not contact Barlow to transfer plaintiff and that he did not even learn of plaintiff's grievance until after plaintiff was transferred. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 8) Barlow also states that he did not initiate or prepare a transfer order for plaintiff. (Affidavit of David Barlow, ¶¶ 4, 5, attached as Exhibit D to Defendants' Motion for Summary Judgment)

On March 14, 2007, inmate Bellville heard Rewerts arguing with an inmate named George Merlino. (Affidavit of James Bellville, attached as Exhibit C to Plaintiff's Response, ¶ 5) Bellville also heard Rewerts ask Correctional Officer Boorman if Boorman could put a shank in Merlino's bunk or something. Bellville further claims that he heard Rewerts tell Boorman that Rewerts was going to "milk it for all it's worth" because he had learned he was going to lose his job. (Affidavit of James Bellville, attached as Exhibit C to Plaintiff's Response, ¶ 5) Rewerts states that he did answer a grievance from prisoner Merlino, but it was on March 9, not March 14. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 10) Rewerts also says that there was no argument between him and Merlino, he did not ask someone to plant a shank in his bed, and he has never been informed of losing his job. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 10)

On March 19, 2007, plaintiff was returned to the Cotton Correctional Facility. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 11) On March 20, 2007, plaintiff filed a grievance against defendants for the alleged retaliatory transfer. (Exhibit D to Plaintiff's Complaint) On March 23, 2007, that grievance was denied by the MDOC because Rewerts had no part in the transfer and plaintiff was "transferred in error." (Exhibit E to Plaintiff's Complaint) Plaintiff appealed that denial, but his appeal was denied at Step II by the MDOC because "[t]he transfer coordinator has confirmed that [plaintiff] was transferred in error. Mr. Rewerts had no part in the transfer. As soon as the error was discovered, he was returned to JCF and was reinstated in AOP. The allegation is unfounded." (Exhibits F and G to Plaintiff's Complaint)

Plaintiff appealed his grievance regarding his transfer to Step III and, after failing to receive a response to that appeal, he filed the complaint in this matter on June 21, 2007 (D/E #1). According to plaintiff, at the time he filed his complaint he believed that prison officials had 90 days from the initial filing of a grievance to respond to a Step III appeal. While he later learned that the time line for the grievance procedure had been extended to 120 days prior to the filing of his complaint, that change was never announced to prisoners. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶¶ 16-17) Inmate Inman helped plaintiff prepare his pleadings and Inman also did not know that MDOC policy had changed with regard to the time line of Step III grievances. (Declaration of David Inman, attached as Exhibit B to Plaintiff's Response, ¶¶ 4-5) Moreover, according to Inman, the policy change was not disclosed to

prisoners and, as of November 13, 2007, the new policy directive was not available in the prison law library. (Declaration of David Inman, attached as Exhibit B to Plaintiff's Response, ¶ 6)

On September 4, 2007, the MDOC denied plaintiff's grievance at Step III because "the transfer was done by mistake and while the JCF transfer coordinator was on leave. Once the transfer coordinator returned, she was notified by URF of the mistake and the prisoner was sent back to JCF as soon as possible." (Step III Grievance Response, attached as Exhibit B to Plaintiff's Response to Defendants' Motion for Summary Judgment)

On October 15, 2007, defendants filed the motion for summary judgment pending before the court (D/E #15). In that motion, defendants argue that they are entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit and because there is no issue of material fact in dispute with respect to plaintiff's retaliation claim. Defendants also argue that, even if there is an issue of material fact in dispute, they are entitled to qualified immunity because plaintiff's rights were not clearly established.

On December 20, 2007, plaintiff filed a response to defendants' motion for summary judgment (D/E # 21). In that response, plaintiff argues that he should be deemed to have substantially complied with the exhaustion requirement because he made a good faith effort to properly exhaust his administrative remedies. Plaintiff also argues that an issue of material fact is in dispute with respect to his retaliation claim and that his right to be free from retaliation was clearly established when defendants transferred him.

**III. Standard of Review**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

 **A. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

Section 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance

with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999). In Wyatt, for example, the Sixth Circuit found that the plaintiff had substantially complied with the exhaustion requirement by making a good faith attempt to reach the appropriate prison official and the case was allowed to proceed despite the plaintiff's failure to properly exhaust his administrative remedies. Wyatt, 193 F.3d at 880. The Sixth Circuit has also concluded that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004).

In this case, while plaintiff filed his complaint on June 21, 2007 (D/E #1), the MDOC grievance procedures regarding his claims of retaliatory transfer were no completed until September 4, 2007 (Step III Grievance Response, attached as Exhibit B to Plaintiff's Response to Defendants' Motion for Summary Judgment). Given that timing, it would appear that plaintiff failed to properly exhaust his administrative remedies prior to filing suit and that his claims should be barred. Nevertheless, plaintiff should be deemed to have substantially complied with § 1997e(a) because the evidence in this case demonstrates that plaintiff attempted to wait until the time MDOC had for completing the grievance procedure had passed before filing suit and the sole reason plaintiff's complaint was premature was because prison officials failed to inform plaintiff about the change in policies.

As discussed above, administrative remedies are deemed to be exhausted when prison officials fail to timely respond to a properly filed grievance. Boyd, 380 F.3d at 996. Pursuant to MDOC Policy Directive 03.02.130(S), the "total grievance process from the point of filing a Step III grievance to providing a Step III response shall generally be completed within 120

calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." (PD 03.02.130, attached as Ex. E to Defendants' Motion for Summary Judgment)[1]

As noted by defendants, plaintiff failed to wait 120 days before filing suit. However, PD 03.02.130 took effect on March 5, 2007, a mere fifteen days before plaintiff filed his grievance regarding the transfer (Grievance Form, attached as Exhibit D to Plaintiff's Complaint) and plaintiff declares that he was not advised of the change from 90 days[2] to 120 days. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶¶ 16-17) Plaintiff also provided an affidavit from another inmate stating that the prisoners were not informed of the change in MDOC policy and that, at the time plaintiff filed his complaint, the law library did not contain the new policy directive. (Declaration of David Inman, attached as Exhibit B to Plaintiff's Response, ¶ 6)

The above evidence, which defendants do not refute, demonstrates that plaintiff made a good faith effort to properly exhaust his administrative remedies prior to filing suit and that his

---

[1] While PD 03.02130 only provides that the total grievance process "shall generally be completed within 120 days" and it does not appear to make that time frame mandatory, it is the only time frame involving the Step II response. Consequently, in determining whether administrative remedies are deemed to be exhausted because the prison officials failed to timely respond to a properly filed grievance, a court should use 120 days as the deadline.

[2] While neither party provided it as evidence, it appears undisputed that under the earlier relevant policy directive, 03.02.130(U), provided that the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved" PD 03.02130(U) (effective date December 19, 2003)

good faith effort was thwarted by the neglect of prison officials in disclosing the change in deadlines. Plaintiff waited an appropriate amount of time before filing this action and, while MDOC subsequently filed a late Step III response, plaintiff should still be deemed to have substantially complied with § 1997e(a).[3]

### B. Failure to State a Claim for Retaliation

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir. 2002) (internal quotation marks omitted).

---

[3]Plaintiff also argues that the Sixth Circuit has refused to dismiss an action on exhaustion grounds where the administrative grievance process had been completed during the pendency of the appeal because it would unduly expend judicial resources to dismiss it where the action would simply be refiled after remand. Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383, *1 (6th Cir. May 23, 2000). However, unlike the facts in this matter, the district court had already decided that case on the merits by the time it reached the Sixth Circuit and the Sixth Circuit wanted to avoid the redundant exercise of having the district court decide the merits again after the case was refiled, which is not a danger here.

**1. Protected Conduct**

Defendants argue that plaintiff was not engaged in protected conduct in this case and, therefore, they are entitled to summary judgment. According to defendants, plaintiff merely bases his claim on an argument he alleges he had with Rewerts. However, engaging in the grievance process constitutes protected conduct. See Siggers-El v. Barlow, 412 F.3d 693, 699-700 n.3 (6th Cir. 2005). In this case, plaintiff's evidence demonstrates that he was pursuing a grievance when the interview with Rewerts occurred and that plaintiff told Rewerts that plaintiff would continue to pursue his grievance. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶¶ 4-5; Declaration of David Inman, attached as Exhibit B to Plaintiff's Response, ¶ 2) Viewing the evidence in a light most favorable to plaintiff, as the court must, a genuine issue of material fact exists as to whether plaintiff was engaged in protected conduct and defendants are not entitled to summary judgment because of the absence of protected conduct.

**2. Adverse Action**

"An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594,

603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625. Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage. Bell, 308 F.3d at 603.

In this case, the alleged retaliatory action was a transfer to another prison. Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases). However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness. See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358. In Siggers-El, the aggravating

-13-

factors accompanying the transfer included the loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her. 412 F.3d at 704. See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004) (finding that the plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

Viewing the evidence in a light most favorable to plaintiff as the court must, a genuine issue of material fact exists as to whether plaintiff's transfer was an adverse action. As a consequence of his transfer, plaintiff was removed from AOP, which he need to complete to be eligible for parole, and he lost his prison job. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 12) Such aggravating factors are not inconsequential and a reasonable trier of fact could conclude that such a retaliatory act would deter a person from exercising his rights. Consequently, this action should not be dismissed at the summary judgment stage on the basis that there was no adverse action. Bell, 308 F.3d at 603.

### C. Causation

Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. Thaddeus-X, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on

summary judgment. Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001). There is no causation where the defendant is not the decision-maker. See Smith, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case); Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation claim because they were not involved in the decision to terminate the plaintiff); Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998) (holding that statements by nondecision-makers cannot suffice to satisfy the plaintiff's burden of demonstrating animus). Moreover, while retaliation can rarely be supported with direct evidence of intent, the plaintiff must have more than conclusory allegations of retaliatory motive unsupported by material facts. Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005).

In this case, there is a genuine issue of material fact in dispute with respect to causation. Defendants provide affidavits stating that Rewerts did not know about plaintiff's grievance until after plaintiff was transferred and that plaintiff's transfer was already being processed when plaintiff filed his grievance. (Affidavit of Randee Rewerts, attached as Exhibit B to Defendants' Motion for Summary Judgment, ¶ 8; Affidavit of Joseph Barrett, ¶ 4, attached as Exhibit C to Defendants' Motion for Summary Judgment)

In response, plaintiff points to both the timing of his transfer and the conflicting reasons for the transfer given by MDOC officials. According to plaintiff's evidence, plaintiff informed

-15-

Rewerts that plaintiff was going to continue to pursue his grievance on March 9, 2007, and Barlow screened plaintiff for a transfer that same day. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶¶ 4-5; Security Classification Screen - Review, attached as Exhibit B to Plaintiff's Complaint) Plaintiff was transferred on March 12, 2007. (Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Response, ¶ 8) With respect to the transfer itself, while Barlow claims that the transfer coordinator requested that he complete the Security Classification Screen so plaintiff could be transferred. (Affidavit of David Barlow, ¶¶ 3, 4, attached as Exhibit D to Defendants' Motion for Summary Judgment), the warden at JCF stated that "the transfer was done by mistake and while the JCF transfer coordinator was on leave." (Step III Grievance Response, attached as Exhibit B to Plaintiff's Response to Defendants' Motion for Summary Judgment) Given the timing of plaintiff's transfer and the conflicting evidence regarding the transfer coordinator's role in plaintiff's transfer, a rational trier of fact could find for plaintiff and defendants are therefore not entitled to summary judgment.

Additionally, even if defendants' evidence demonstrates that the transfer coordinator approved the transfer, that does not lead to the conclusion that the transfer cannot be imputed to the defendants. See Thaddeus-X, 175 F.3d at 398 (holding that a transfer could be imputed to the defendant where the defendant's performance of a security screen of the plaintiff set the plaintiff's transfer in motion). In this case, defendants' alleged actions, initiating the transfer, performance of the security screen and approval of the security screen, set in motion plaintiff's transfer and a genuine issue of material fact exists with respect to causation.

### C. Qualified Immunity

Defendants argue they are entitled to summary judgment on the grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

In this case, defendants argue that they are entitled to qualified immunity because, even if they did violate plaintiff's constitutional rights, those rights were not clearly established. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Although it need not be the case that 'the very action in question has previously been held unlawful, ... in the light of pre-existing law, the unlawfulness must be apparent.'" Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir.1992), quoting Anderson, 483 U.S. at 640. An official "can still be on notice that [his] conduct violates established law even in novel factual circumstances," Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), "when a public-official defendant 'knew or should have known' of the constitutionally violative effect of his actions." Harlow v. Fitzgerald, 457 U.S. 800, 820-21, 102 S.Ct. 2727, 73 L.Ed.2d 396 (Brennan, J., concurring) (1982). In determining whether a constitutional right is clearly established, this court should look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other district courts within the Sixth circuit, and finally to decisions of other circuits. Siggers-El v. Barlow, 412 F.3d 693, 703 (6th Cir. 2005).

The defendants in this case are not entitled to a qualified immunity defense. It is clearly established that plaintiff has a First Amendment right to file administrative grievances in prison. See, e.g., Herron v. Harrison, 203 F.3d 410 (6th Cir.2000). It is also clear that plaintiff has a right to be free from retaliation. See, e.g., Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc) Defendants argue that, the specific context of plaintiff's case, it is not clearly established that a retaliatory transfer constituted a violation of constitutional rights given the case law discussed above, finding that a transfer was not an adverse act. However,

defendants fail to acknowledge the cases holding that, where there are aggravating factors, a prison transfer is an adverse act that would deter a person of ordinary firmness. See, e.g., Siggers-El, 412 F.3d at 704; Hix, 196 Fed. Appx. at 358. Given the aggravating factors present in this case, plaintiff's rights were clearly established for purposes of qualified immunity analysis.

## V. Conclusion

For the reasons discussed above, this Court recommends that defendants' motion be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                s/Virginia M. Morgan
                Virginia M. Morgan
                United States Magistrate Judge

Dated: April 28, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on April 28, 2008.

                s/Jane Johnson
                Case Manager to
                Magistrate Judge Virginia M. Morgan