UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTY SIMS,

        Plaintiff,                        CIVIL ACTION NO. 07-12646

      v.                                DISTRICT JUDGE AVERN COHN

RANDY REWERTS, JOSEPH          MAGISTRATE JUDGE VIRGINIA M. MORGAN
BARRETT, and DAVID BARLOW,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

     This is a 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants retaliated against him for exercising his rights under the United States Constitution. The matter comes before the court on Defendants' Second Motion for Summary Judgment (D/E #53). Plaintiff filed a response to defendants' motion (D/E #55) and defendants filed a reply to plaintiff's response (D/E #56). For the reasons discussed below, this court recommends that defendants' motion be **DENIED.**

**II. Background**

     While incarcerated at the G. Robert Cotton Correctional Facility ("JCF"), plaintiff became enrolled in Assaultive Offender Program ("AOP") on November 1, 2006. In their depositions, both defendant Barrett and Patricia Vining, the transfer coordinator at JCF, stated

that plaintiff should have a medical hold on his file prohibiting his transfer because of plaintiff's presence in AOP.  (Deposition of Joseph Barret, pp. 19, 21, 29-30, attached as Exhibit 17 to Plaintiff's Response; Deposition of Patricia Vining, pp. 17-19, attached as Exhibit C to Defendants' Motion, Exhibit 16 to Plaintiff's Response, and Exhibit L to Defendants' Reply)

According to plaintiff, he filed a grievance on March 3, 2007, regarding persistent problems with receipt of his mail.  (Grievance JCF-07-03-518-15e, attached as Exhibit A to Defendants' Motion for Summary Judgment)  It is undisputed that, on March 9, 2007, defendant Rewerts came to plaintiff's cellblock to interview prisoners about their grievances.  (Plaintiff's Affidavit, ¶ 3, attached as Exhibit 1 to Plaintiff's Response; Affidavit of Randee Rewerts, ¶ 4, attached as Exhibit 2 to Plaintiff's Response)  According to plaintiff, he was one of the prisoners interviewed.  (Plaintiff's Affidavit, ¶ 3, attached as Exhibit 1 to Plaintiff's Response)  Plaintiff also declares that he and Rewerts argued about the grievance, and plaintiff informed Rewerts that plaintiff would seek further review of the grievance.  (Plaintiff's Affidavit, ¶ 4, attached as Exhibit 1 to Plaintiff's Response)  According to Rewerts, he was unaware on March 9th that plaintiff had filed a grievance and plaintiff was not one of the prisoners he interviewed on that day.  (Affidavit of Randee Rewerts, ¶ 4, attached as Exhibit 2 to Plaintiff's Response)  Rewerts also denies speaking to or engaging in an argument with plaintiff.  (Affidavit of Randee Rewerts, ¶ 5, attached as Exhibit 2 to Plaintiff's Response)

Plaintiff further declares in his affidavit that Unit Officer Mark Cross told plaintiff that Rewerts had called Cross later on March 9, 2007, to say that Rewerts hoped plaintiff had thermal underwear.  (Plaintiff's Affidavit, ¶ 5, attached as Exhibit 1 to Plaintiff's Response)  Rewerts

denies making any such comment to Cross. (Affidavit of Randee Rewerts, ¶ 7, attached as Exhibit 2 to Plaintiff's Response)

Also on March 9, 2007, Matthew Ward, the acting transfer coordinator at JCF that day, filled out a transfer order with respect to plaintiff. (Transfer Order, attached as Exhibit 4 to Plaintiff's Response) Plaintiff was to be transferred to Chippewa Correctional Facility ("URF") and the "Comments" section of the transfer order stated: "Requesting two level waiver for OPT needs, prisoner is being transferred to make room for incoming transfers." (Transfer Order, attached as Exhibit 4 to Plaintiff's Response)

At his deposition, Ward testified that he does not remember the transfer and can only guess at what occurred. (Deposition of Matthew Ward, pp. 28, 33-34, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) According to Ward, JCF mainly took in requests for prison transfers at that time and he had no reason to initiate a transfer on a Friday afternoon, when the regular transfer coordinator, Pat Vining, had taken leave. (Deposition of Matthew Ward, pp. 8, 28, 35, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) Ward also testified that, assuming URF contacted him and requested a transfer, he probably would have looked to a list Vining kept in her office of names of inmates that could be transferred out of the facility. (Deposition of Matthew Ward, pp. 8, 33, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) If necessary, Ward would have contacted ARUSes or RUMs through a group e-mail requesting more names. (Deposition of Matthew Ward, pp. 9, 34, attached as Exhibit B to Defendants'

Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)  Ward does not remember if he got plaintiff's name from the list or if plaintiff's name was submitted in response to a request.  (Deposition of Matthew Ward, p. 34, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)  Ward also does not remember if anyone specifically requested that plaintiff be transferred.  (Deposition of Matthew Ward, p. 34, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)

Ward further testified that, in selecting a prison to transfer, his primary purpose was to find a prisoner that was medically able to be transferred.  (Affidavit of Matthew Ward, ¶¶ 4-10, attached as Exhibit J to Defendants' Reply; (Deposition of Matthew Ward, pp. 29, 44, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)  A secondary concern is to find a prisoner that would not require a waiver to be transferred.  (Deposition of Matthew Ward, p. 29, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)  According to Ward, he typically asks for names of prisoners at specific security classification levels. (Deposition of Matthew Ward, p. 9, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)

Ward also sent an e-mail to the Arthur Derry, the transfer coordinator at URF, on March 9, 2007.  (March 9, 2007 e-mail, attached as Exhibit 9 to Plaintiff's Response)  In that e-mail, Ward wrote: "Just to confirm my earlier e-mail that was sent as a question asking about room on the bus.  JCF will need transportation on Monday, March 13, for a one for one trade with URF.

JCF will be sending a Level 3 prisoner to URF and be receiving a Level 2 prisoner back from URF." (March 9, 2007 e-mail, attached as Exhibit 9 to Plaintiff's Response) At Derry's deposition, he testified that the facility that initiates the transfer typically arranges for and confirms the transportation. (Deposition of Arthur Derry, p. 27, attached as Exhibit 19 to Plaintiff's Response)

Derry stated at his deposition that he had no independent recollection of having initiated the transfer (Deposition of Arthur Derry, pp. 9, 40-41, attached as Exhibit 19 to Plaintiff's Response) and that he would not normally schedule a last-minute Friday trade for the Monday-morning bus (Deposition of Arthur Derry, pp. 11-12, attached as Exhibit 19 to Plaintiff's Response). Derry further testified that, if he had initiated the transfer, it would have most likely been because Shirley, the prisoner transferred to JCF, had an enemy at URF. (Deposition of Arthur Derry, pp. 37-38, attached as Exhibit 19 to Plaintiff's Response) However, as indicated by the special offender notice (SPON) in inmate Shirley's file, Shirley did have an enemy, but that enemy was located at URF. (Defendants' Response to Plaintiff's Third Request for Documents, #2, attached as Exhibit 13 to Plaintiff's Response)

Derry also testified that he almost never initiated a transfer in which a prisoner whose custody had been reduced to Level II was sent to a down-state facility. (Deposition of Arthur Derry, p. 41, attached as Exhibit 19 to Plaintiff's Response) According to Derry, there was a great need for Level II prisoners in the prisons near URF, because whenever Level II prisoners in those facilities got in trouble, they were moved up to Level III and are transferred to URF. (Deposition of Arthur Derry, p. 41, attached as Exhibit 19 to Plaintiff's Response) Derry

therefore "saved" his prisoners downgraded to Level II to trade with those facilities, where the demand for Level II prisoners was always high. (Deposition of Arthur Derry, p. 41, attached as Exhibit 19 to Plaintiff's Response) According to Derry, he could only recall a handful of cases in which he initiated the transfer of a Level II prisoner to a Jackson facility. (Deposition of Arthur Derry, p. 34, attached as Exhibit 19 to Plaintiff's Response) Derry also testified that "the easiest way to do a transfer is trade for the same level." (Deposition of Arthur Derry, p. 19, attached as Exhibit 19 to Plaintiff's Response)

Also on March 9, 2007, defendant Barlow screened plaintiff for plaintiff's Security Classification. (Security Classification Screen, attached as Exhibit 10 to Plaintiff's Response) The reason for the screen was plaintiff's future transfer as prison officials must fill out such a screen when transferring a prisoner. (MDOC PD 05.01.130(J)(2) "Prisoner Security Classification", attached as Exhibit 3 to Plaintiff's Response) According to Barlow's affidavit, Vining contacted him and requested that he complete the Security Classification Screen. (Affidavit of David Barlow, ¶¶ 3, 4, attached as Exhibit 7 to Plaintiff's Response) However, as discussed above, Vining left early on March 9, 2009 and Ward was handling the transfer. (Deposition of Patricia Vining, p. 7, attached as Exhibit C to Defendants' Motion, Exhibit 16 to Plaintiff's Response, and Exhibit L to Defendants' Reply; (Deposition of Matthew Ward, pp. 5-6, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) The screen was subsequently approved by defendant Barrett. (Security Classification Screen - Review, attached as Exhibit 10 to Plaintiff's Response)

According to Ward, the person completing the Security Classification Screen does not check for AOP. (Deposition of Matthew Ward, pp. 14, 26-27, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) Instead, it is the responsibility of the transfer coordinator to checks on AOP. (Deposition of Matthew Ward, p. 14, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply) On January 24, 2007, however, Barlow had reviewed and approved a parole eligibility report on plaintiff showing that plaintiff was enrolled in Assaultive Offender Therapy. (Parole Eligibility Report, attached as Exhibit 6 to Plaintiff's Response)

On March 12, 2007, plaintiff was transferred to the Chippewa Correctional Facility, a Level III prison in Kinross, Michigan. (Plaintiff's Affidavit, ¶ 7, attached as Exhibit 1 to Plaintiff's Response) According to plaintiff, plaintiff's unit advisor at the Chippewa Correctional Facility told plaintiff that plaintiff should not be at a Level III prison because of plaintiff's security level and that plaintiff must have "pissed someone off." (Plaintiff's Affidavit, ¶ 8, attached as Exhibit 1 to Plaintiff's Response) As a result of his transfer, plaintiff lost his prison job and his therapy program was interrupted. (Plaintiff's Affidavit, ¶¶ 8-10, attached as Exhibit 1 to Plaintiff's Response)

With respect to plaintiff's transfer, defendant Rewerts stated in an affidavit that he did not contact Barlow to transfer plaintiff and that he did not even learn of plaintiff's grievance until after plaintiff was transferred. (Affidavit of Randee Rewerts, ¶ 8, attached as Exhibit 2 to Plaintiff's Response) Barlow also stated in an affidavit that he did not initiate or prepare a

transfer order for plaintiff.  (Affidavit of David Barlow, ¶¶ 4, 5, attached as Exhibit 7 to Plaintiff's Response)  Defendant Barrett was asked in an interrogatory to please "state the name and job title … of the person who initiated the plaintiff's transfer to the Chippewa facility."  Barrett's response was "I believe I did."  (Defendant Joseph Barrett's Response to Plaintiff's First Interrogatories, #10, attached as Exhibit 8 to Plaintiff's Response)  At his subsequent deposition, however, Barrett testified that he did not initiate plaintiff's transfer, and that for a routine transfer like plaintiff's, he had no involvement in selecting the prisoner to be traded. (Deposition of Joseph Barrett, pp. 14, 25, attached as Exhibit 17 to Plaintiff's Response)

On March 19, 2007, plaintiff was returned to the Cotton Correctional Facility. (Plaintiff's Affidavit, ¶ 9, attached as Exhibit 1 to Plaintiff's Response)  According to her deposition, once Vining became aware that a prisoner on AOP had been transferred, she checked the HCC screen and it still did not show any AOP or other holds for the plaintiff.  (Deposition of Patricia Vining, pp. 18-19, attached as Exhibit C to Defendants' Motion, Exhibit 16 to Plaintiff's Response, and Exhibit L to Defendants' Reply)

### **B. Procedural History**

Plaintiff filed the complaint in this matter on June 21, 2007 (D/E #1).  In that complaint, plaintiff alleges that defendant Rewerts directly retaliated against plaintiff, in violation of the First and Fourteenth Amendments to the United States Constitution, because of plaintiff's exercise of his constitutional right to petition for redress of grievances.  Plaintiff also alleges that defendant Barrett directly participated in the retaliation initiated by defendant Rewerts by approving the transfer and the raising of plaintiff's security level.  Plaintiff further alleges that

defendant Barlow directly participated in the retaliation by preparing a security classification screen in order to initiate the transfer at the request of defendant Rewerts. According to plaintiff's complaint, he suffered substantial penalties and punishment for exercising his rights.

On October 15, 2007, defendants filed a motion for summary judgment (D/E #15). In that motion, defendants argued that they were entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit and because there is no issue of material fact in dispute with respect to plaintiff's retaliation claim. Defendants also argued that, even if there is an issue of material fact in dispute, they are entitled to qualified immunity because plaintiff's rights were not clearly established.

On December 20, 2007, plaintiff filed a response to defendants' motion for summary judgment (D/E # 21). In that response, plaintiff argued that he should be deemed to have substantially complied with the exhaustion requirement because he made a good faith effort to properly exhaust his administrative remedies. Plaintiff also argued that an issue of material fact is in dispute with respect to his retaliation claim and that his right to be free from retaliation was clearly established when defendants transferred him.

On April 28, 2008, this court issued a report recommending that defendants' motion for summary judgment be denied (D/E #33). Defendants did not object to that report and recommendation, and the Honorable Avern Cohn subsequently adopted the report and recommendation when denying defendants' motion for summary judgment (D/E #36).

On April 27, 2009, defendants filed the motion for summary judgment pending before the court (D/E #53). In that motion, defendants argue that they are entitled to summary judgment

because no genuine issue of material fact exists with respect to the adverse action and causation elements of plaintiff's retaliation claim.

On May 6, 2009, plaintiff filed a response to defendants' second motion for summary judgment (D/E #55). In that response, plaintiff argues that the evidence in this case demonstrates that genuine issues of material fact are in dispute and that summary judgment is therefore inappropriate.

On May 19, 2009, defendants filed a reply to plaintiff's response to their second motion for summary judgment (D/E #56). In that reply, defendants reiterate their argument that they are entitled to summary judgment because no genuine issue of material fact exists with respect to the adverse action and causation elements of plaintiff's retaliation claim.

On June 24, 2009, this court held a hearing on defendants' second motion for summary judgment.

### III. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will

vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir. 2002) (internal quotation marks omitted).

In this case, defendants argue that there are no genuine issue for trial with respect to the adverse action and causation elements of plaintiff's retaliation claim. For the reasons discussed below, this court finds both of defendants' arguments to be unpersuasive.[1]

### A. Adverse Action

"An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be

---

[1] In their brief, defendants concede that factual questions exist as to the protected-conduct element of plaintiff's retaliation claim. (Defendants' Motion for Summary Judgment, p. 5)

actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).  A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625.  Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage.  Bell, 308 F.3d at 603.

In this case, the alleged retaliatory action was a transfer to another prison.  Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct.  See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases).  However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness.  See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358.  In Siggers-El, the aggravating factors accompanying the transfer included the loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her.  412 F.3d at 704.  See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004)

(Tarnow, J.) (finding that the plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

As discussed above, this court previously recommended that defendants' first motion for summary judgment be denied because issues of material fact were in dispute with respect to plaintiff's retaliation claim, including the adverse action element of plaintiff's retaliation claim (D/E #33). Defendants did not object to that report and recommendation, and Judge Cohn subsequently adopted the report and recommendation when denying defendants' motion for summary judgment (D/E #36). In their second motion for summary judgment, defendants make the same argument they made earlier and, consequently their motion should be denied for the same reasons. Viewing the evidence in a light most favorable to plaintiff, as the court must, a genuine issue of material fact exists as to whether plaintiff's transfer was an adverse action. As a consequence of his transfer, plaintiff was removed from AOP, which he needed to complete to be eligible for parole, and he also lost his prison job. Such aggravating factors are not clearly inconsequential and a reasonable trier of fact could conclude that such a retaliatory act would deter a person from exercising his rights. Therefore, defendants are not entitled to summary judgment on the basis that there was no adverse action. Bell, 308 F.3d at 603.

### B. Causation

Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. Thaddeus-X, 175 F.3d at 399.

Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001). There is no causation where the defendant is not the decision-maker. See Smith, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case); Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation claim because they were not involved in the decision to terminate the plaintiff); Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998) (holding that statements by nondecision-makers cannot suffice to satisfy the plaintiff's burden of demonstrating animus). Moreover, while retaliation can rarely be supported with direct evidence of intent, the plaintiff must have more than conclusory allegations of retaliatory motive unsupported by material facts. Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005).

As discussed above, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and the party opposing the motion need only come forward with specific facts showing that there is a genuine issue for trial if the moving party meets that initial burden. Matsushita, 475 U.S. at 587. In this case, defendants have met that initial burden by providing evidence suggesting that they were not personally involved in plaintiff's transfer.

To succeed in an action under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). Here, Barrett testified at his deposition that he did not initiate plaintiff's transfer, and that for a routine transfer like plaintiff's, he had no involvement in selecting the prisoner to be traded. By the time the transfer order came before Barrett, the transfer had already been approved by the MDOC's Central Office and the MDOC's Healthcare. (Deposition of Joseph Barrett, pp. 14, 25, attached as Exhibit 17 to Plaintiff's Response) With respect to plaintiff's transfer, defendant Rewerts stated in an affidavit that he did not contact Barlow to transfer plaintiff and that he did not even learn of plaintiff's grievance until after plaintiff was transferred. (Affidavit of Randee Rewerts, ¶ 8, attached as Exhibit 2 to Plaintiff's Response) Additionally, defendants point out that Rewerts has no authority to transfer plaintiff or any role in transfers. Barlow stated in an affidavit that he did not initiate or prepare a transfer order for plaintiff. (Affidavit of David Barlow, ¶¶ 4, 5, attached as Exhibit 7 to Plaintiff's Response) Instead, Barlow merely screened plaintiff for plaintiff's Security Classification at the request of a transfer coordinator (Security Classification Screen, attached as Exhibit 10 to Plaintiff's Response; Affidavit of David Barlow, ¶¶ 3, 4, attached as Exhibit 7 to Plaintiff's Response) Moreover, as testified to by Ward, the person completing the Security Classification Screen does not check for AOP. (Deposition of Matthew Ward, pp. 14, 26-27, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply)

Given the above evidence suggesting a lack of personal involvement, defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact. The

burden then shifts to plaintiff to come forward with specific facts showing that there is a genuine issue for trial. Matsushita, 475 U.S. at 587.

In response to defendants' motion, plaintiff submits evidence demonstrating that plaintiff was transferred at a time when he should have had a medical hold in his file prohibiting such a transfer. (Deposition of Joseph Barret, pp. 19, 21, 29-30, attached as Exhibit 17 to Plaintiff's Response; Deposition of Patricia Vining, pp. 17-19, attached as Exhibit C to Defendants' Motion, Exhibit 16 to Plaintiff's Response, and Exhibit L to Defendants' Reply) Plaintiff also provides evidence that Barrett initiated the transfer (Defendant Joseph Barrett's Response to Plaintiff's First Interrogatories, #10, attached as Exhibit 8 to Plaintiff's Response) and that Barlow knew of plaintiff's participation in AOP (Parole Eligibility Report, attached as Exhibit 6 to Plaintiff's Response) Plaintiff further submits evidence suggesting that Rewerts was aware of plaintiff's transfer to a prison in the upper peninsula of Michigan. (Plaintiff's Affidavit, ¶ 5, attached as Exhibit 1 to Plaintiff's Response)

With respect to the transfer itself, while neither of the two transfer coordinators involved remember plaintiff's transfer, both Ward and Derry testified that it would have been unusual for them to have initiated the transfer. (Deposition of Matthew Ward, pp. 8, 28, 33-35, attached as Exhibit B to Defendants' Motion, Exhibit 14 to Plaintiff's Response, and Exhibit K to Defendants' Reply; Deposition of Arthur Derry, pp. 9, 11-12, 40-41, attached as Exhibit 19 to Plaintiff's Response) Moreover the sole reason Derry suggested for why he might initiate the transfer was not applicable to this case. (Deposition of Arthur Derry, pp. 37-38, attached as

Exhibit 19 to Plaintiff's Response; Defendants' Response to Plaintiff's Third Request for Documents, #2, attached as Exhibit 13 to Plaintiff's Response)

Additionally, Derry testified that he almost never initiated a transfer in which a prisoner whose custody had been reduced to Level II was sent to a down-state facility, which is what occurred here. (Deposition of Arthur Derry, p. 41, attached as Exhibit 19 to Plaintiff's Response) Derry further testified that the facility that initiates the transfer typically arranges for and confirms the transportation. (Deposition of Arthur Derry, p. 27, attached as Exhibit 19 to Plaintiff's Response) and Ward sent an e-mail in this case discussing the arrangements for the transportation involved in this transfer (March 9, 2007 e-mail, attached as Exhibit 9 to Plaintiff's Response).

Viewing the above evidence in a light most favorable to plaintiff, as the court must, a genuine issue of material fact exists as with respect to the causation element of plaintiff's retaliation claim. While defendants submitted evidence suggesting a lack of personal involvement in the transfer, plaintiff countered with evidence that suggesting that Barrett initiated the transfer while defendants Barlow and Rewerts had knowledge of the impropriety of such a transfer. Plaintiff also submitted substantial evidence demonstrating how irregular this transfer was, and that this irregular and improper transfer was initiated at JCF. Moreover, the Sixth Circuit has specifically identified the timing of an adverse action as circumstantial evidence of causation, Thaddeus-X, 175 F.3d at 399, and, while defendants assert that plaintiff's transfer was in motion prior to plaintiff's argument with Rewerts, all of the relevant actions were taken after that argument. Defendants argue that plaintiff's evidence is by no means conclusive

-18-

and that plaintiff has not proven anything, but that is not the standard for summary judgment. Here, viewing the evidence and drawing all inferences in favor of plaintiff, a rational trier could find for plaintiff on the issue of causation and, therefore, summary judgment is inappropriate on that basis.

## V. Conclusion

For the reasons discussed above, this court recommends that defendants' motion be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                  S/Virginia M. Morgan
                                  Virginia M. Morgan
                                  United States Magistrate Judge

Dated: September 24, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 24, 2009.

                                  s/Jane Johnson
                                  Case Manager to
                                  Magistrate Judge Virginia M. Morgan